**Certiorari Denied, October 3, 2012, No. 33,762**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2013-NMCA-077**

**Filing Date:  July 18, 2012**

**Docket No. 30,477**

**DIDIER L. FIGUEROA, Individually, and
as Personal Representative for the ESTATE
OF DOLORES FIGUEROA, Deceased,**

    **Plaintiff-Appellee,**

**v.**

**THI OF NEW MEXICO AT CASA ARENA
BLANCA LLC, a Foreign Limited Liability
Company d/b/a CASA ARENA BLANCA
NURSING HOME, THI OF BALTIMORE,
INC., a Foreign Corporation, JOHN DOE
and JANE DOE,**

    **Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Sarah M. Singleton, District Judge**

Yenson, Lynn, Allen & Wosick, P.C.
Patrick D. Allen
April D. White
Albuquerque, NM

for Appellee

Johnson, Trent, West & Taylor, LLP
Lori D. Proctor
Houston, TX

for Appellant

**OPINION**

1

**VIGIL, Judge.**

**{1}** This case requires us to examine whether an arbitration agreement that a nursing home requires to be signed as a condition of admission is substantively unconscionable. Agreeing with the district court that the agreement is unfairly and unreasonably one-sided in favor of the nursing home, we affirm.

## I. BACKGROUND

**{2}** Defendant, THI of New Mexico at Casa Arena Blanca, LLC (THICAB), operates Casa Arena Blanca, a nursing home in Alamogordo, New Mexico. Marlene Urbina sought to admit her mother, Dolores Figueroa, to Casa Arena Blanca in August 2008. Ms. Urbina had been granted a general power of attorney by Ms. Figueroa, upon which she acted during the admissions process. As a condition of Ms. Figueroa's admission to Casa Arena Blanca, Ms. Urbina was required to sign various admission agreements, including an arbitration agreement. The agreement states: "Resident/Representative understands that signing this Agreement to arbitrate is a precondition for medical treatment or admission to the Health Care Center." It further provides in pertinent part:

> In the event of any controversy or dispute between the parties arising out of or relating to Resident's stay at the Health Care Center, the Health Care Center's Admission Agreement, or breach thereof, or relating to the provision of care or services to Resident, including but not limited to any alleged tort, personal injury, negligence, contract, consumer protection, claims under the New Mexico Unfair Practices Act, or other claim; or any federal or state statutory or regulatory claim of any kind; or whether or not there has been a violation of any right or rights granted under State law (collectively "Disputes"), and the parties are unable to resolve such through negotiation, then the parties agree that such Dispute(s) shall be resolved by arbitration, as provided by the National Arbitration Forum Code of Procedure or other such association.

> The parties agree that guardianship proceedings, collection and eviction actions initiated by the Health Care Center, any dispute where the amount in controversy is less than Two Thousand Five Hundred Dollars ($2,500.00) will be excluded from binding arbitration and may be filed and litigated in any court which may have jurisdiction over the dispute.

**{3}** Ms. Figueroa was a resident at Casa Arena Blanca for four months: from her admission on September 2, 2008, to the date of her death, January 18, 2009. After her death, Ms. Figueroa's son, Didier Figueroa (Plaintiff), individually, and as her personal representative, filed a complaint in the district court against Defendant. The complaint contained allegations of: wrongful death; personal injury; negligent hiring, training, and

2

supervision; negligence per se; misrepresentation; violation of the Unfair Practices Act; and loss of consortium. Plaintiff stated that "[d]espite her advanced age, Ms. Figueroa was relatively active at the time of her admission," but her health "rapidly declined" following her admission to Casa Arena Blanca due to Defendants' failure to provide proper care. Plaintiff further alleged that while residing at Casa Arena Blanca, Ms. Figueroa suffered unsanitary hygiene conditions, numerous avoidable falls and resulting injuries, skin breakdown, urinary tract infections, dehydration, bruises, pain and suffering, mental anguish, humiliation, and wrongful death.

**{4}** In response to Plaintiff's complaint, Defendant filed a motion to dismiss the lawsuit from district court for lack of subject matter jurisdiction, to compel arbitration, and to stay litigation. Defendant asserted that the causes of action in the complaint were subject to arbitration under the terms of the agreement that Ms. Urbina had signed on behalf of Ms. Figueroa when she was admitted to Casa Arena Blanca.

**{5}** The district court ruled that the arbitration agreement was unenforceable under *Cordova v. World Finance Corporation of New Mexico*, in which our Supreme Court held an arbitration agreement that was unfairly and unreasonably one-sided in favor of the drafter was substantively unconscionable and unenforceable. 2009-NMSC-021, ¶ 25, 146 N.M. 256, 208 P.3d 901. The district court noted that the agreement is unreasonably and unfairly one-sided stating: "really this is not a mutual obligation . . . the nursing home has, for all practical purposes, excluded almost every kind of case it would bring against the resident or resident family from arbitration but has bound the resident in almost every instance where the resident and his or her family would be suing the nursing home, so I think the *Cordova* case would be applied in this context to find that the arbitration clause was unenforceable."[1]

**{6}** Defendant appeals pursuant to NMSA 1978, Section 44-7A-29(a)(1) (2001) (allowing an appeal to be taken from an order denying a motion to compel arbitration). The district court stayed further proceedings pending our decision on appeal.

## II. ANALYSIS

**{7}** Defendant argues: (1) that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-6 (2006), preempts our state law that applies a substantive unconscionability analysis to the

---

[1]We note that Judge Browning of the United States District Court for the District of New Mexico ruled contrarily to Judge Singleton on an identical arbitration clause in a different case. *See THI of N.M. at Hobbs Ctr., LLC v. Patton*, Civ. No. 11-537 LH/CG, 2012 WL 112216, at *21-22 (D.N.M. Jan. 3, 2012). Judge Browning concluded that the arbitration clause was not unconscionable and noted that even if it were, the court could have only stricken the exclusions portion and saved the parties' bilateral agreement to arbitrate all other claims. *See id.* For the reasons herein stated in this opinion, we agree with Judge Singleton's application of New Mexico law to this arbitration clause.

terms of arbitration agreements; (2) that the agreement was not unfairly and unreasonably one-sided in favor of Defendant, because the district court misinterpreted the meaning and effect of the exemptions from arbitration; and (3) that even if the exemptions from arbitration are substantively unconscionable, the remainder of the arbitration agreement should be severed and enforced, because the parties have bilateral obligations to arbitrate tort claims. We address each argument in turn.

## A.      Preemption by the Federal Arbitration Act

**{8}**      We agree with Defendant that the FAA applies to its arbitration agreement. *See* 9 U.S.C. §§ 1-2 (stating that the FAA governs all arbitration agreements that involve commerce). The FAA requires that state courts enforce arbitration agreements unless the agreement is otherwise revocable under existing legal or equitable principles. *See* 9 U.S.C. § 2 ("A written provision . . . or a contract [to arbitrate] . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). Accordingly, arbitration agreements must be placed on "equal footing" with other contracts, and are revocable only by "generally applicable contract defenses, such as fraud, duress, or unconscionability," but not by defenses that single out arbitration agreements or "that derive their meaning from the fact that an agreement to arbitrate is at issue." *Rivera v. Am. Gen. Fin. Servs. Inc.*, 2011-NMSC-033, ¶¶ 16-17, 150 N.M. 398, 259 P.3d 803 (internal quotation marks and citation omitted). Thus, if a state law or judicial doctrine treats arbitration agreements disparately, it is inconsistent with, and preempted by, the FAA and cannot be used to render the arbitration agreement unenforceable. *See id.*; *AT&T Mobility LLC v. Concepcion*, 563 U.S. __ , 131 S. Ct. 1740, 1747-53 (2011); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-88 (1996). However, if state law governs issues concerning the validity, revocability, and enforceability of contracts generally, that law's application to arbitration agreements is not preempted by the FAA. *See Cordova*, 2009-NMSC-021, ¶ 37 (" '[S]tate law, whether of legislative or judicial origin, is applicable [and does not contravene the FAA] *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' " (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)).

**{9}**      For example, in *Fiser v. Dell Computer Corp.*, the defendant sought to enforce an arbitration agreement that precluded the consumer from bringing a class action against the defendant. 2008-NMSC-046, ¶ 4, 144 N.M. 464, 188 P.3d 1215. In analyzing the defendant's arguments, the Court considered a New Mexico statute providing that any waiver of a consumer's right to a class action in an arbitration agreement was void and unenforceable. *See id.* ¶ 13 (citing NMSA 1978, § 44-7A-1(b)(4)(f) (2001) and § 44-7A-5 (2001)).[2] The New Mexico Supreme Court noted that the statute may have been preempted

---

[2]Section 44-7A-5 states: "In the arbitration of a dispute between a consumer, borrower, tenant or employee and another party, a disabling civil dispute clause contained in a document relevant to the dispute is unenforceable against and voidable by the consumer,

4

by the FAA because it specifically singled out arbitration agreements, but nevertheless, the Court reasoned that the statute was evidence of New Mexico's strong public policy to provide a procedure for consumers to have a remedy for small claims. *See Fiser*, 2008-NMSC-046, ¶ 13. Therefore, the Court concluded that the provision waiving the plaintiff's right to a class action in the arbitration agreement was substantively unconscionable and unenforceable as contrary to our state's public policy. *See id.* ¶¶ 13-22. In considering the dictates of the FAA, the Court reasoned that because unconscionability is a doctrine that applies to all contracts under New Mexico law, its holding was not preempted by the FAA. *See id.* ¶ 23 ("Because our invalidation of the ban on class relief rests on the doctrine of unconscionability, a doctrine that exists for the revocation of any contract, the FAA does not preempt our holding.").

**{10}**    Additionally, in *Cordova*, in concluding that the application of unconscionability was not preempted by the FAA, the Court stated:

> New Mexico's legal doctrine of contractual unconscionability, like that of other jurisdictions, was not developed to target or invalidate this or any other arbitration agreement. Our unconscionability analysis, which is applied in the same manner to arbitration clauses as to any other clauses of a contract, is therefore not inconsistent with the dictates of the FAA. The FAA is intended to promote inexpensive, fair, and reasonable arbitration alternatives to litigation. It is not a license for businesses to take advantage of consumers by the imposition of one-sided, unfair, and legally unconscionable arbitration schemes. We will not allow our courts to be used to enforce unconscionable arbitration clauses any more than we will allow them to be used to enforce any other unconscionable contract in New Mexico.

*Id.* ¶ 38 (citation omitted).

**{11}**    In spite of the clarity of these Supreme Court cases, Defendant contends that New Mexico's unconscionability analysis, as applied to arbitration agreements, is preempted by the FAA. In support of its argument, Defendant cites *Concepcion*, in which the United States Supreme Court overturned California's *Discover Bank* rule, that invalidated class action waivers in arbitration agreements on the grounds of substantive unconscionability. The *Discover Bank* rule provides:

---

borrower, tenant or employee." Section 44-7A-1(b)(4)(f) defines "disabling civil dispute clause" as: "a provision modifying or limiting procedural rights necessary or useful to a consumer, borrower, tenant or employee in the enforcement of substantive rights against a party drafting a standard form contract or lease, such as, by way of example, a clause requiring the consumer, tenant or employee to . . . *decline to participate in a class action*." (Emphasis added.)

5

When [a class action] waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the party "from responsibility for [its] own fraud, or willful injury to the person or property of another." Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*See Concepcion*, ___ U.S. at ___, 131 S. Ct. at 1746 (quoting *Discover Bank v. Superior Ct.*, 113 P.3d 1100, 1110 (Cal. 2005), *overruled by Concepcion*). In *Concepcion*, the Court found that the *Discover Bank* rule targeted arbitration agreements in a manner inconsistent with the dictates of the FAA, and was therefore preempted. *Concepcion*, ___ U.S. at ___, 131 S. Ct. at 1750-51.

**{12}** Based on *Concepcion*'s reference to the substantive unconscionability analysis of *Discover Bank*, Defendant argues that *Fiser* was implicitly overruled, that *Cordova* is likewise "inapposite," and therefore, the district court erred in relying on *Cordova* as authority for precluding enforcement of its agreement. We disagree that *Concepcion* controls. As an initial matter, we note that *Concepcion* is inapplicable to the issues raised by the arbitration agreement in this case. No class action ban is before us. Furthermore, to the extent that Defendant argues that the substantive unconscionability analysis as applied to class action bans in *Fiser* was overruled by *Concepcion*, we conclude that different public policies underlie the Court's holdings in *Fiser* from the Court's holding in *Cordova*.

**{13}** Our substantive unconscionability analysis as applied in *Cordova* to one-sided arbitration agreements is distinguishable from the application of the *Discover Bank* rule at issue in *Concepcion*. The equitable doctrine of substantive unconscionability is not a rule that directly targets a specific term of an agreement or an entire class of agreements. *See Concepcion*, ___ U.S. at ___, 131 S. Ct. at 1750-53 (concluding that the rule that rendered class action waiver provisions in an arbitration contract unenforceable was preempted by the FAA); *Doctor's Assocs., Inc.*, 517 U.S. at 684 (concluding that a statute targeted arbitration agreements by requiring any agreement for arbitration, specifically, to have a notice provision on the first page in capital, underlined letters and was therefore preempted by the FAA). Rather, under New Mexico law, substantive unconscionability is an equitable remedy, applied on a case-by-case basis, analyzing the particular contract and its terms for unfair and unreasonable one-sided favorability towards the drafter. *See Guthmann v. La Vida Llena*, 103 N.M. 506, 510, 709 P.2d 675, 679 (1985) (stating that "contract terms which are unreasonably favorable to the other party" can contribute to a finding of unconscionability), *overruled on other grounds by Cordova*, 2009-NMSC-021, ¶ 31; *Pugh v. Phelps*, 37 N.M. 126, 131, 19 P.2d 315, 318 (1932) ("[A] court of equity will not enforce and should not enforce a contract which is unfair, unequal, and unjust, nor one, the

6

performance of which would be in any way unconscionable.").

**{14}** Thus, we decline to construe *Concepcion* in the broad manner that Defendant requests. *See Concepcion*, ___ U.S. at ___, 131 S. Ct. at 1750-53. Construing *Concepcion* to invalidate the district court's ruling would be inconsistent with our New Mexico Supreme Court precedent. Further, if we were to conclude that arbitration agreements are, as a matter of law, exempted from the unconscionability analysis as it is applied to all other contracts, this would place arbitration agreements on an *unequal* footing, and provide them special treatment under the law. *See Rivera*, 2011-NMSC-033, ¶ 16 (stating that the FAA mandates that arbitration agreements be placed on "equal footing" with other contracts (quoting *Concepcion*, ___ U.S. at ___, 131 S. Ct. at 1745)). Placing arbitration agreements in a special status would be inconsistent with United States Supreme Court precedent, New Mexico precedent, and the FAA. *See Concepcion*, ___ U.S. at ___, 131 S. Ct. at 1745 ("[C]ourts must place arbitration agreements on an equal footing with other contracts[.]"); *Rivera*, 2011-NMSC-033, ¶ 16. In addition to our reasoning under New Mexico law, we also find support for our conclusion from other jurisdictions.[3]

**{15}** Furthermore, after the United States Supreme Court issued *Concepcion*, our own Supreme Court reaffirmed its holding in *Cordova. See Rivera*, 2011-NMSC-033, ¶¶ 16, 42

---

[3]*See Brewer v. Mo. Title Loans*, No. SC 90647, 2012 WL 716878, at *4 (Mo. Mar. 6, 2012) (en banc) ("Although the majority [in *Concepcion*] held that the *Discover Bank* rule was preempted by the [FAA], it does not follow, as the title company contends, that all state law unconscionability defenses are preempted by the [FAA] in all cases. . . . consistent with the stated issue in *Concepcion*, the Supreme Court's holding was expressly limited to finding that California's *Discover Bank* rule is preempted by the [FAA]." (internal quotation marks and citations omitted)); *Palmer v. Infosys Techs. Ltd.*, No. 2:11cv217-MHT, 2011 WL 5434258, at *4-5 (M.D. Ala. Nov. 9, 2011) (stating that California's rule to invalidate arbitration agreements where a "lack of mutuality" exists on the grounds of substantive unconscionability survives the ruling of *Concepcion*, because it "does not interfere with fundamental attributes of arbitration and is not preempted by the FAA." (alteration, internal quotation marks, and citation omitted)); *Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Group*, 128 Cal. Rptr. 3d 330, 339 n.4 ("Defendants appear to argue that [*Concepcion*] essentially preempts all California law relating to unconscionability. We disagree, as the case simply does not go that far. General state law doctrine pertaining to unconscionability is preserved unless it involves a defense that applies only to arbitration or that derives its meaning from the fact that an agreement to arbitrate is at issue." (alteration, internal quotation marks, and citation omitted)); *Kanbar v. O'Melveny & Myers*, No. C-11-0892 EMC, 2011 WL 2940690, at *6 (N.D. Cal. July 21, 2011) (rejecting the defendant's assertion that *Concepcion* precludes a challenge to an arbitration agreement on the grounds of unconscionability, and concluding that arbitration agreements are still subject to unconscionability analysis in spite of the ruling in *Concepcion*).

(citing *Concepcion* for a general rule of law). In *Rivera*, the Court concluded that an unfairly one-sided arbitration agreement was substantively unconscionable, and explicitly reversed our conclusion that the agreement was not one-sided, stating that we construed *Cordova* too narrowly. *See Rivera*, 2011-NMSC-033, ¶ 42. Thus, to the extent that Defendant disagrees with our analysis, and argues that *Concepcion* governs, we are nonetheless bound by New Mexico Supreme Court precedent. *See State v. Manzanares*, 100 N.M. 621, 622, 674 P.2d 511, 512 (1983) (stating that we are bound by New Mexico Supreme Court precedent even when a United States Supreme Court decision seems contra).

**{16}** Defendant further asserts that the district court's ruling is inconsistent with the dictates of the FAA because it requires "mutuality of obligation" for arbitration agreements, and mandates the "type" of consideration required for arbitration agreements. Defendant argues: "the FAA would preempt a judicial rule classifying as unconscionable contracts lacking symmetrical promises to arbitrate because such a rule would impose a special consideration requirement applicable solely and uniquely to arbitration agreements." Thus, Defendant contends that the substantive unconscionability analysis acts to treat arbitration agreements differently from other contracts, because we don't generally inquire into the adequacy of consideration to support a contract.

**{17}** However, Defendant's argument fails to appreciate that consideration and unconscionability are two different analyses under contract law. Consideration is a prerequisite to the legal formation of a valid contract. *See Nance v. L.J. Dolloff Assocs., Inc.*, 2006-NMCA-012, ¶ 19, 138 N.M. 851, 126 P.3d 1215 ("To be legally enforceable[, a contract must have] an offer, acceptance, consideration, and mutual assent."); *Smith v. Vill. of Ruidoso*, 1999-NMCA-151, ¶ 33, 128 N.M. 470, 994 P.2d 50 ("Consideration is essential to the enforcement of a promise."). Unconscionability, on the other hand, "is an *equitable* doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova*, 2009-NMSC-021, ¶ 21 (emphasis added).

**{18}** New Mexico law does not equate adequate consideration with a conscionable contract. As *Fraser v. State Savings Bank*, states:

> Mere inadequacy of price, or any other inequality in a bargain, we are told, is not to be understood as constituting per se a ground to avoid a bargain in equity. For courts of equity, as well as courts of law, act upon the ground that every person who is not . . . under disability, is entitled to dispose of his property in such manner and upon such terms as he chooses; and whether his bargain be wise and discreet or otherwise, or profitable or unprofitable, are considerations not for the courts of justice, but for the party himself to deliberate upon. . . . Still there may be such unconscionableness or inadequacy of consideration in a bargain, as to demonstrate some gross imposition or some undue influence; and in such case, courts of equity ought to interfere, upon satisfactory ground of fraud.

8

18 N.M. 340, 355-56, 137 P. 592, 596 (1913). Unconscionability is examined by the court where, in spite of adequate consideration to support a contract, the unfair terms of the contract do not warrant enforcement. *See Rivera v. Rivera*, 2010-NMCA-106, ¶¶ 20-26, 149 N.M. 66, 243 P.3d 1148 (concluding that a premarital agreement was valid, but unenforceable as unconscionable, because the agreement restricted the husband's right to spousal support, and was therefore against the public policy of our state), *cert. denied*, 2010-NMCERT-010, 149 N.M. 64, 243 P.3d 1146; *Manzano Indus., Inc. v. Mathis*, 101 N.M. 104, 104, 678 P.2d 1179, 1179 (1984) ("This Court has, however, refused to enforce the literal terms of such [otherwise enforceable] contracts when to do so would work an unfairness which shocks the conscience of the court."); *Smith & Lowe Constr. Co. v. Herrera*, 79 N.M. 239, 240, 442 P.2d 197, 198 (1968) ("[C]ourts generally allow rescission of [a subcontractor's] contract without forfeiture of the bid bond where it appears that . . . the mistake was of such grave consequence that to enforce the contract would be unconscionable" and the mistake was material, not committed negligently or in bad faith, reasonable notice was given, and no serious prejudice would occur to the offeree); *Pugh*, 37 N.M. at 131, 19 P.2d at 318 (stating that contracts will not be enforced that are unconscionable, and "[h]owever valid or legal a contract may be in its execution, he who comes into a court of equity asking its enforcement and seeking equity must at all times be willing to do equity"); *Fraser*, 18 N.M. at 355-56, 137 P. at 596; *see also Motsinger v. Lithia Rose-FT, Inc.*, 156 P.3d 156, 163 (Or. Ct. App. 2007) ("In our view, however, it is possible for a contractual term to be supported by adequate consideration and yet still be so unreasonable as to be unconscionable in the context of a contract of adhesion.").

**{19}** We find further support for the separate treatment of unconscionability and consideration in the Supreme Court's analysis of the arbitration agreement in *Cordova*. There, the Court concluded that the consideration to support the contract was not illusory, and therefore, the proper analysis of the alleged unfair terms should be examined "through the framework of a traditional unconscionability analysis." *Cordova*, 2009-NMSC-021, ¶ 16. In spite of the existing consideration to support the agreement, the Court concluded that the terms were unfairly and unreasonably one-sided, and thereby, substantively unconscionable. *See id.* ¶¶ 16, 32.

**{20}** Thus, because unconscionability and consideration are different analyses under New Mexico law, we disagree with Defendant's contention that our unconscionability analysis equates to a disparate treatment of arbitration agreements. Consideration to support the arbitration agreement is not the issue. Rather, the district court's ruling is predicated on the agreement's unenforceability under the equitable doctrine of substantive unconscionability.

**{21}** We inquire, on an equal basis for all contracts, whether terms of a contract are so unfairly unequal as to prevent enforcement of the contract under the equitable doctrine of unconscionability. *See, e.g.*, *Bowlin's, Inc. v. Ramsey Oil Co.*, 99 N.M. 660, 668, 662 P.2d 661, 669 (Ct. App. 1983) (discussing substantive unconscionability as applied to all contracts, stating that it applies to "contract clauses which are illegal or contrary to public

9

policy" and that "'[u]nconscionability has generally been recognized to include . . . contract terms which are unreasonably favorable to the other party,'" (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965))); *Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 31, 123 N.M. 526, 943 P.2d 560 ("A court should thus not interfere with the bargain reached by the parties unless the court concludes that the policy favoring freedom of contract ought to give way to one of the well-defined equitable exceptions, such as unconscionability, mistake, fraud or illegality."). Equal application of a generally applicable contract defense does not violate the FAA. *See Cordova*, 2009-NMSC-021, ¶¶ 36-37; *see also Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 771 (Cal. 2000) ("We disagree that enforcing a 'modicum of bilaterality' in arbitration agreements singles out arbitration for suspect status. . . . the ordinary principles of unconscionability may manifest themselves in forms peculiar to the arbitration context. One such form is an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party."). Accordingly, we conclude that our unconscionability analysis does not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of [the FAA]." *See Concepcion*, ___ U.S. at ___, 131 S. Ct. at 1753 (internal quotation marks and citation omitted). We therefore turn to address Defendant's argument that the district court erred in ruling that Defendant's mandatory arbitration agreement is substantively unconscionable.

## B.    Unconscionability of the Arbitration Agreement

**{22}**    Unconscionability "can be analyzed from both procedural and substantive perspectives." *Cordova*, 2009-NMSC-021, ¶ 21. Substantive unconscionability concerns the "legality and fairness of the contract terms themselves," including "whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns." *Id.* ¶ 22. Procedural unconscionability, on the other hand, "examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other." *Id.* ¶ 23.

**{23}**    "While there is a greater likelihood of a contract's being invalidated for unconscionability if there is a combination of both procedural and substantive unconscionability, there is no absolute requirement in our law that both must be present to the same degree or that they both be present at all." *Id.* ¶ 24. Thus, our courts have concluded that where an agreement is so one-sided that the substantive unconscionability is apparent on the face of the contract, analysis of the procedural unconscionability of the formation of the contract is unnecessary to establish that the contract is unconscionable. *See id.* ¶¶ 32-34 (concluding that an arbitration provision that gave no judicial remedies to the consumer while reserving the right to take almost all of the claims the lender would have to court was one-sided, and stating "the substantive unconscionability of these one-sided arbitration provisions is so compelling that we need not rely on any finding of procedural unconscionability"); *Rivera*, 2011-NMSC-033, ¶ 54 (same). Likewise, here, only the

substantive unconscionability of the one-sided terms of the agreement are at issue. We review issues relating to the unconscionability of an arbitration agreement de novo. *See Cordova*, 2009-NMSC-021, ¶ 11 (providing that review of a district court's denial of a motion to compel arbitration, review of the applicability and construction of a contractual provision requiring arbitration, and whether a contract is unconscionable are all issues of law which are reviewed de novo).

**{24}** Our Supreme Court invalidated arbitration agreements that were unfairly and unreasonably one-sided in favor of the drafter in *Cordova* and in *Rivera*. In *Cordova*, the Court invalidated an arbitration agreement in a loan contract. The provision required that the parties arbitrate all their claims, but in the event of a default, the lender was entitled to "seek its remedies in an action at law or in equity, including but not limited to, judicial foreclosure or repossession." *Cordova*, 2009-NMSC-021, ¶ 4 (internal quotation marks omitted). The Court concluded that the arbitration scheme was "self-serving" to the lender and was "so unfairly and unreasonably one-sided that it [was] substantively unconscionable." *Id.* ¶ 32.

**{25}** Likewise, in *Rivera*, the Court addressed the substantive unconscionability of an arbitration agreement in a car title loan contract that required the borrower to arbitrate any claims that she might have against the lender, but exempted from arbitration the lender's "self-help or judicial remedies including, without limitation, repossession or foreclosure." 2011-NMSC-033, ¶ 3 (internal quotation marks omitted). When the case was in the Court of Appeals, we concluded that the clause was not "completely one-sided," because some claims of the lender would be required to be arbitrated, and the exemptions from arbitration were related to highly statutorily regulated causes of action, and therefore, the agreement to arbitrate was not substantively unconscionable. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2010-NMCA-046, ¶¶ 9-13, 148 N.M. 784, 242 P.3d 351, *rev'd by* 2011-NMSC-033. The case was appealed to our Supreme Court, and although it was unnecessary to the disposition of the case, the Court addressed the unconscionability of the agreement because it wanted to correct this Court's "overly narrow construction on New Mexico's unconscionability jurisprudence and [misapplication] of [the Supreme Court's] holding in *Cordova*." *Rivera*, 2011-NMSC-033, ¶ 1. The Supreme Court explicitly reversed our ruling in *Rivera*, stating that "complete one-sidedness" is not required for the terms of a contract to be substantively unconscionable. *See id.* ¶¶ 39-54 (alteration, internal quotation marks, and citation omitted). The Court reasoned that, in spite of the lender's bilateral obligation to arbitrate certain claims, the arbitration agreement was, in effect, unfairly and unreasonably one-sided in favor of the lender. *See id.* ¶¶ 53-54. The Court stated: "By excepting foreclosure and repossession from arbitration, [the lender] retained the right to obtain through the judicial system the only remedies it was likely to need." *Id.* ¶ 53. Thus, the Court concluded that the lender's ability "to seek judicial redress of its likeliest claims while forcing [the borrower] to arbitrate any claim she may have is unreasonably one-sided." *Id.*

**{26}** The arbitration agreement signed on behalf of Ms. Figueroa exempts: "guardianship proceedings, collection and eviction actions initiated by the Health Care Center, any dispute

11

where the amount in controversy is less than Two Thousand Five Hundred Dollars ($2,500.00)." Defendant argues that the district court misinterpreted "collection actions" to mean suits against a resident for fees, because in drafting the clause, Defendant meant that exemption to be construed solely to the "enforcement of judgments." Thus, Defendant asserts that the practical effect of the arbitration clause does not reserve its most likely claims for a judicial forum. Defendant asserts that "collection actions" must be construed as being limited to judgment enforcement actions because of its proximity between guardianship and eviction actions in the clause that Defendant asserts require judicial enforcement, like judgment enforcement actions; and because "any dispute" in the exemption for claims under $2,500 covers claims against residents for fees. We disagree with Defendant's construction of the arbitration agreement.

**{27}** Terms in a contract are to be afforded their usual and ordinary meaning. *See H-B-S P'ship v. Aircoa Hospitality Servs., Inc.*, 2005-NMCA-068, ¶ 19, 137 N.M. 626, 114 P.3d 306. "Collect" is defined in the dictionary as "to present as due and receive payment for." *Webster's Third New Int'l Dictionary* 444 (unabridged) (2002); *see also Black's Law Dictionary* 180 (6th ed. 1991) (defining collect as "[t]o receive payment"). "Collection actions" in its usual and ordinary meaning is broader than enforcement of judgments. Had Defendant intended to limit the exclusion to actions for enforcement of a judgment, it could have narrowly drafted the agreement to refer to those specifically, instead of using the broader term "collection actions." *See Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 14, 134 N.M. 558, 80 P.3d 495 ("We construe ambiguities in a contract against the drafter to protect the rights of the party who did not draft it."). We therefore reject Defendant's argument that the district court erred in construing collection actions as including actions against a resident for fees.[4]

**{28}** Defendant asserts that even if the "collection actions" exemption is construed to include lawsuits against residents for fees, that this arbitration clause is distinguishable from those in *Rivera* and *Cordova* because they prevented the resident from bringing *any* claims to court. *See Rivera*, 2011-NMSC-033, ¶ 53; *Cordova*, 2009-NMSC-021, ¶ 27. Thus, Defendant asserts that residents' rights under the agreement to bring claims under $2,500 and guardianship proceedings in a judicial forum are sufficient to prevent this agreement from being egregiously one-sided, and that *Cordova* and *Rivera* do not require mirror obligations between the parties to arbitrate claims. We agree that *Cordova* and *Rivera* do not mandate equal obligations, and we recognize that in this case, the arbitration agreement can be construed to grant some rights to a judicial forum to the resident, unlike *Cordova* and

---

[4]We note that Judge Browning came to the same conclusion in *THI of New Mexico at Hobbs Center, LLC*, Civ. No. 11-537 LH/CG, 2012 WL 112216, at *20 (rejecting the same argument on the grounds that collection actions in its regular usage does not refer solely to enforcement of judgments, but rather, is a broader term and because judgment enforcement is a term of art that could have been used if the nursing home had intended to limit the exclusion to only those actions).

*Rivera*. However, even assuming that the exclusions in the agreement allow residents to bring guardianship and claims under $2,500 in a judicial forum as Defendant contends, we conclude that these rights to a judicial forum do not sufficiently act to remedy the gross disparity that results from Defendant's reservation of its most likely claims to a judicial forum, while the resident's most likely claims are subject to arbitration.

**{29}** First, we question when a circumstance could arise where the resident would have a guardianship action *against* the nursing home. *See Black's Law Dictionary* 776 (9th ed. 2009) (stating that "[a] guardianship is almost always an involuntary procedure imposed by the state on the ward[,]" and defining guardianship as "[t]he fiduciary relationship between a guardian and a ward or other incapacitated person, whereby the guardian assumes the power to make decisions about the ward's person or property"). If there are any, Defendant has failed to point the Court to them. Further, although the exemption from arbitration for claims under $2,500 grants some judicial rights to the resident, this bilateral right to a judicial forum is de minimis. Rather, the practical effect of this agreement is no different from *Cordova* and *Rivera*: the resident is precluded from bringing any claims that he or she would likely have, while the most likely claims the nursing home would have against the resident are excluded from arbitration.

**{30}** Thus, we conclude that like the arbitration agreements in *Rivera* and *Cordova*, the arbitration agreement in this case is unreasonably and unfairly one-sided in favor of Defendant. While we agree that arbitration obligations do not have to be completely equal, and that parties may freely enter into reasonable agreements to exempt certain claims from arbitration, we refuse to enforce an agreement where the drafter unreasonably reserved the vast majority of his claims for the courts, while subjecting the weaker party to arbitration on essentially all of the claims that party is likely to bring. *See Rivera*, 2011-NMSC-033, ¶ 53. Defendant cannot avoid the equitable doctrine of unconscionability by drafting an agreement that reserves its most likely claims for a judicial forum, and provides some exemptions from arbitration to the resident so that there is some appearance of bilaterality, when that exemption is completely meaningless in practicality because the resident would rarely, if ever, raise that type of claim against the nursing home. *See, e.g.*, *Iwen v. U.S. W. Direct*, 1999 MT 63, ¶ 32, 293 Mont. 512, 977 P.2d 989 (concluding that an arbitration agreement that lacked mutuality of obligation, was one-sided, and contained terms that were unreasonably favorable to the drafter was unconscionable the court stated: "this does not mean arbitration agreements must contain mutual promises that give the parties identical rights and obligations, or that the parties must be bound in the exact same manner. This simply restates the rule of law that disparities in the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter, as they are in this case, that the agreement becomes unconscionable and oppressive").

**{31}** In further support of its claim, Defendant asserts that Plaintiff failed to present evidence that the arbitration agreement exempts the most likely claims Defendant would bring against a resident. We conclude that the inference that guardianship, collection, and eviction proceedings would be the most likely claims of the nursing home is self-evident.

13

These claims are, by definition, more likely to be initiated by the nursing home against the resident, as they involve proceedings that are incident to the nursing home's relationship with its resident tenants. *See generally* NMSA 1978, § 47-8-3(G) (1999) ("'[E]viction' means any action initiated by the owner to regain possession of a dwelling unit and use the premises under terms of the Uniform Owner-Resident Relations Act."); *Black's Law Dictionary* 635 (9th ed. 2009) (defining eviction as "[t]he act or process of legally dispossessing a person of land or rental property"); NMSA 1978, § 45-5A-102(F) (2011) (effective January 1, 2012) (" '[G]uardianship proceeding' means a judicial proceeding in which an order for the appointment of a guardian is sought or has been issued.")[5]; *Webster's Third New Int'l Dictionary*, *supra,* at 444 (defining "collect" as "to present as due and receive payment for"). Common sense dictates that the most likely claims Defendant would have against a resident would be related to its provision of services to that resident: i.e., the collection of fees for services through guardianship proceedings and collection actions, and the procedure for discontinuing those services through eviction. We therefore reject Defendant's contention that the lack of evidence pertaining to the likelihood of Defendant bringing the exempted claims requires reversal of the district court's ruling.

**{32}** Defendant also argues that the agreement is not unfairly one-sided because it is subject to arbitration on many potential lawsuits it could have against the resident, including the following: (1) tort actions against a resident to recover money damages for negligent or intentional destruction of facility property or injury to other residents or staff; (2) claims for contribution or equitable indemnification arising from tort injuries inflicted by residents on other residents; (3) malicious abuse of process; (4) declaratory judgment to adjudicate resident rights and for injunctive relief; and (5) defamation actions. Despite Defendant's argument that it is conceivable that some claims could be brought by the nursing home that would be subject to arbitration, we reiterate that the agreement nonetheless exempts the *most likely* claims that the nursing home would have against a resident at its facility: guardianship proceedings, collection actions, and evictions. These bilateral obligations that both parties may have to arbitrate certain types of claims do not act to rescind the gross disparity in reservation of the nursing home's *most likely claims* to a judicial forum, while subjecting the resident's most likely claims to arbitration. *See Cordova*, 2009-NMSC-021, ¶ 25 ("Contract provisions that unreasonably benefit one party over another are substantively unconscionable."). As was the case in *Rivera*, where the lender is subject to arbitration for some claims, but exempts those claims it is "likely to need," the agreement is unconscionable as unfairly and unreasonably one-sided. *See Rivera*, 2011-NMSC-033, ¶ 53.

**{33}** Defendant further argues that the arbitration clause was drafted to exclude guardianship proceedings, collection actions, and evictions because those actions result in remedies that a court must enforce, and because small claims are not cost-effective in

---

[5]Defendant points out in its brief that "the Facility pursues fee collections through the formation of a deceased resident's estate or through guardianship proceedings (to obtain Medicaid payments)."

14

arbitration. Therefore, Defendant argues that the clause was drafted to exclude claims from arbitration that are better suited to a judicial forum. However, our Supreme Court rejected a similar proposition in *Rivera*. 2011-NMSC-033, ¶ 51. When *Rivera* was before this Court, we had concluded that because judicial foreclosure and repossession were highly statutorily regulated, it was reasonable for the lender to exempt those proceedings from arbitration in order to maintain statutory protections as a secured creditor. *See id.* ¶ 50. However, our Supreme Court reversed, stating: "As a matter of law arbitrators have broad authority and are deemed capable of granting any remedy necessary to resolve a case," and that "an arbitrator can be given the authority to address any claims a lender may have against a borrower." *Id.* ¶¶ 51-52; *see also* NMSA 1978, § 44-7A-22 (2001) (providing that an arbitrator may award punitive damages, attorney fees and costs, and all other remedies the arbitrator deems "just and appropriate"); NMSA 1978, § 44-7A-23 (2001) (providing that a party may make a motion to the court to confirm an award of the arbitrator). Likewise, here, the assertion that claims might be better suited to a judicial forum does not justify a grossly one-sided arbitration agreement, when an arbitrator can be given the authority to address those claims, and judicial enforcement can be invoked for any remedy granted by the arbitrator.

**{34}** Finally, Defendant asserts that even if the arbitration agreement is unconscionable on the grounds of its one-sided terms; the agreement was supported by other consideration and is therefore enforceable. Defendant argues that it gave alternate consideration in allowing Ms. Figueroa's admission to the nursing home in exchange for her promise to arbitrate, and thus, the fact that mutual promises to arbitrate were not given by both parties is immaterial. However, we reiterate that the unconscionability analysis is a separate matter from whether consideration existed to support the *legal formation* of a contract. Rather, unconscionability voids a contract when it is unfair and grossly unreasonable, even if otherwise legally enforceable under contract formation principles. *See Cordova*, 2009-NMSC-021, ¶¶ 16, 21 (applying equitable doctrine of unconscionability in spite of consideration to support the contract). Thus, the existence of alternative consideration to support the agreement is immaterial under these circumstances, because the arbitration agreement is unenforceable for its inequitable unfairness to the resident, not for lack of consideration.

**{35}** We recognize Defendant's argument that other jurisdictions do not inquire into the substantive unconscionability of the terms of an arbitration agreement, provided there is adequate consideration to support the agreement. *See Motsinger*, 156 P.3d at 162-63 (noting other jurisdictions follow a contrary approach and stating that "[a] number of courts—if not a majority—have rejected challenges of unconscionability, based on the theory that agreements to arbitrate do not require 'mutuality of obligation' but only adequate consideration; that is, as long as the agreement is supported by adequate consideration, the arbitration clause need not apply equally to both parties" (internal quotation marks omitted) (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183 (3d Cir. 1999); *Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1091 (Ala. 2005); *Rains v. Found. Health Sys. Life & Health*, 23 P.3d 1249, 1255 (Colo. App. 2001); *State ex rel Vincent v. Schneider*, 194

15

S.W.3d 853, 859 (Mo. 2006) (en banc); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001)). In spite of other jurisdictions' approaches to the issue, our Supreme Court has spoken, and has explicitly stated that New Mexico courts will not enforce unfairly one-sided agreements under our equitable doctrine of unconscionability. *Cordova*, 2009-NMSC-021, ¶ 25. We therefore decline to follow these other jurisdictions' approaches to the *application* of substantive unconscionability that is inconsistent with our own. We conclude that the district court accurately applied the holdings of *Cordova* and *Rivera* to this case and appropriately concluded that the terms of this arbitration agreement were unfairly and unreasonably one-sided and thereby, substantively unconscionable.

## C.      Severability of the Arbitration Provision

**{36}**    Defendant next argues that even if we affirm the district court's ruling that the "collection" portion of the arbitration agreement is substantively unconscionable, the agreement's savings clause should act to sever and enforce the remainder of the arbitration agreement, including the portion that bilaterally subjects the nursing home and the resident's tort claims to arbitration. The Arbitration Agreement's "savings clause" states: "In the event a court having jurisdiction finds any portion of this Agreement unenforceable, that portion shall not be effective and the remainder of the Agreement shall remain effective."

**{37}**    Defendant did not preserve its argument that the arbitration agreement could be severed from the provisions that were unconscionable. However, Defendant argues that we should address the argument in spite of the lack of preservation because it is a matter of widespread public interest. *See Andrews v. Saylor*, 2003-NMCA-132, ¶ 25, 134 N.M. 545, 80 P.3d 482 (reviewing a matter that was not preserved, but was a matter of "general public interest" (internal quotation marks and citation omitted)). We agree.

**{38}**    When a provision of a contract is deemed unconscionable, "we may refuse to enforce the contract, or we may enforce the remainder of the contract without the unconscionable clause, or we may so limit the application of any unconscionable clause as to avoid any unconscionable result." *See Fiser*, 2008-NMSC-046, ¶ 24 (alterations, internal quotation marks, and citation omitted). In *Cordova* and *Rivera*, the Court concluded that the one-sided arbitration provisions were central to the overall arbitration scheme, and therefore, could not be severed from the arbitration provisions so as to save the parties' general agreement to arbitrate. *Rivera*, 2011-NMSC-033, ¶ 56; *Cordova*, 2009-NMSC-021, ¶ 40. The Court stated in *Cordova*: "we must strike down the arbitration clause in its entirety to avoid a type of judicial surgery that inevitably would remove provisions that were central to the original mechanisms for resolving disputes between the parties." 2009-NMSC-021, ¶ 40.

**{39}**    Here, like the arbitration clauses in *Cordova* and *Rivera*, the exemptions of certain claims from arbitration are so central to the agreement that they are incapable of separation from the agreement to arbitrate, irrespective of any savings clause included in the agreement. *See Rivera*, 2011-NMSC-033, ¶ 56; *Cordova*, 2009-NMSC-021, ¶ 40. Were we to adopt Defendant's suggested severance, it would circumvent our application of the equitable

16

doctrine of unconscionability. The unconscionability of the arbitration clause subjects claims to arbitration that the nursing home resident would most likely bring, while allowing the nursing home's most likely claims to go to court. *Cordova*, 2009-NMSC-021, ¶ 25. Thus, the unbalanced terms of the arbitration agreement, in whole, cause the unfairness and unconscionability of the arbitration agreement. Severing this clause and requiring Plaintiff to arbitrate because this particular claim is bilateral to both parties, but unlikely to be brought by Defendant, would perpetuate the unfairness for which we impose the equitable unconscionability defense. We decline to do so.

**{40}** Defendant argues that even if *Cordova* applies to prevent severance of the unconscionable provisions, the agreement should still be enforced under the savings clause because *Cordova* was not decided until 2009, one year after the arbitration agreement had been signed by the parties. We are required to presume that judicial decisions in civil cases apply retroactively, unless the case announcing the new rule states that it should only be applied prospectively, or the presumption of retroactivity is overcome. *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 26, 149 N.M. 162, 245 P.3d 1214. To overcome the presumption, a three-factor test is used: (1) the decision must establish a new principle of law or decide an issue of first impression, *id.* ¶ 27, (2) the Court must "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation," *id.* ¶ 28 (internal quotation marks and citations omitted), and (3) the Court must consider "the inequity imposed by retroactive application, for where a decision of [the] Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Id.* ¶ 29 (internal quotation marks and citations omitted).

**{41}** *Cordova* did not create new law, but rather, applied the well-settled equitable doctrine of unconscionability to a contract, and clarified our standard for substantive unconscionability. *See Cordova*, 2009-NMSC-021, ¶ 32 ("Applying the settled standards of New Mexico unconscionability law, we conclude that [the arbitration scheme] is so unfairly and unreasonably one-sided that it is substantively unconscionable."). No new rule was created in *Cordova* as to the severance of terms of a contract. *See id.* ¶ 40 (distinguishing the severance from *Padilla,* 2003-NMSC-011, ¶¶ 10, 18, and likening the severance to *Fiser*, 2008-NMSC-046, ¶ 24). Thus, without considering the other factors of the test to overcome the presumption, we conclude that Defendant has failed to establish that retroactivity is at issue in the application of settled law to an arbitration agreement. *See Gomez v. Chavarria*, 2009-NMCA-035, ¶¶ 12-14, 146 N.M. 46, 206 P.3d 157 (rejecting the plaintiff's argument that an interpretation of a statute should not apply retroactively to his case because we concluded that the judicial decision did not constitute a new rule).

## III.    CONCLUSION

**{42}** The judgment of the district court is affirmed.

**{43}** **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for** _Figueroa v. THI of New Mexico_, **No. 30,477**

**CIVIL PROCEDURE**
Arbitration

**CONTRACTS**
Ambiguous Contracts
Consideration
Unconscionable

**FEDERAL LAW**
Preemption

**JURISDICTION**
Subject Matter

**NEGLIGENCE**
Wrongful Death

**REMEDIES**
Arbitration

**TORTS**
Wrongful Death