2008-NMSC-046

188 P.3d 1215

**Robert FISER, individually, and as a representative of a class of persons within the State of New Mexico, Plaintiff–Petitioner,**

v.

**DELL COMPUTER CORPORATION, a/k/a Dell, Inc., Defendant–Respondent.**

**No. 30,424.**

Supreme Court of New Mexico.

June 27, 2008.

Morgan Law Office, Ltd., Ronald Calvin Morgan, Whitney C. Buchanan, P.C., Whitney C. Buchanan, Albuquerque, NM, Feazell & Tighe, L.L.P., Austin Tighe, Austin, TX, for Petitioner.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Edward Ricco, Leslie McCarthy Apodaca, Albuquerque, NM, Reeves & Brightwell, L.L.P., Kim E. Brightwell, Paul Schlaud, Austin, TX, for Respondent.

Gary K. King, Attorney General, David K. Thomson, Assistant Attorney General, Nanette E. Erdman, Assistant Attorney General, Scott Fuqua, Assistant Attorney General, Santa Fe, NM, for Amicus Curiae Office of the Attorney General.

Feferman & Warren, Robert Dale Treinen, Albuquerque, NM, Amy Radon, F. Paul Bland, Jr., Washington, D.C., for Amicus Curiae Public Justice, P.C.

## OPINION

SERNA, Justice.

{1} We granted certiorari to review whether Defendant Dell Computer Corporation's Motion to Stay and Compel Arbitration pursuant to the Federal Arbitration Act was properly granted. We hold that, in the context of small consumer claims that would be prohibitively costly to bring on an individual basis, contractual prohibitions on class relief are contrary to New Mexico's fundamental public policy of encouraging the resolution of small consumer claims and are therefore unenforceable in this state. We reverse.

## I. FACTUAL BACKGROUND AND PROCEEDINGS BELOW

{2} Plaintiff Robert Fiser purchased a computer from Defendant via the company's website. He subsequently filed a putative class action lawsuit contending that Defendant systematically misrepresents the memory size of its computers. He alleges violations of the New Mexico Unfair Practices Act (UPA), NMSA 1978, Sections 57–12–1 to –26 (1967, as amended through 2003), the New Mexico False Advertising Act, NMSA 1978, Sections 57–15–1 to –10 (1965), the New Mexico Uniform Commercial Code (UCC), NMSA 1978, Sections 55–1–101 to –12–111 (1961, as amended), and common law concepts of breach of contract, breach of warranty, misrepresentation, violations of the covenants of good faith and fair dealing, bad faith, and unjust enrichment.

{3} Central to the issue presented is the scant amount of damages alleged: Plaintiff estimates that Defendant's alleged misrepresentation results in a monetary loss to its customers of just ten to twenty dollars per computer.

{4} Defendant filed a Motion to Stay and Compel Arbitration pursuant to the Federal Arbitration Act (FAA). See 9 U.S.C. §§ 3, 4 (2000). Defendant argued that, pursuant to the "terms and conditions" on its website at the time of the purchase, Plaintiff is required to individually arbitrate his claims and is precluded from proceeding on a classwide basis either in litigation or arbitration. The "terms and conditions" included an arbitration clause mandating that "any claim, dispute, or controversy ... against Dell ... [was subject to] binding arbitration administered by the National Arbitration Forum (NAF)." The terms also included a clause (hereinafter referred to as the class action ban) which directed that the arbitration was "limited solely to the dispute or controversy between [Plaintiff] and Dell."[1] Finally, the

---

1. Although, in the past, the procedural rules of the NAF also did not allow for classwide arbitration, the rules have apparently been amended to provide for such a procedure since briefing was completed. See http://www.arb-forum.com/default.aspx and proceed through the links as

"terms and conditions" contained a choice-of-law provision declaring Texas law to be controlling. Although the parties disagree over whether Plaintiff assented to Defendant's "terms and conditions," we do not reach that issue. We assume without deciding, for the purpose of our analysis, that he assented to the terms.

{5} The district court agreed with Defendant that Plaintiff was bound by the arbitration provision and thus granted Defendant's motion. The Court of Appeals affirmed. *Fiser v. Dell*, 2007–NMCA–087, ¶ 1, 142 N.M. 331, 165 P.3d 328. Plaintiff petitioned for a writ of certiorari; both the New Mexico Attorney General and Public Justice filed amicus briefs in support of Plaintiff. Because we conclude that the class action ban is contrary to fundamental New Mexico public policy, we reverse.

## II. DISCUSSION

### A. Application of Texas Law Would Violate New Mexico Public Policy

### 1. New Mexico Respects Choice–of–Law Provisions Unless Application of the Chosen Law Would Contravene New Mexico Public Policy

■ {6} The threshold question in determining the validity of the class action ban is which state's law must be applied to this potentially multi-state class action that was filed in New Mexico by a New Mexico resident against a defendant that maintains its principal place of business in Texas for damages relating to a contract that contains a choice-of-law clause directing that Texas law be applied.

■ {7} New Mexico respects party autonomy; the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision. Section 55–1–301(A); *see also United Wholesale Liquor Co. v. Brown–Forman Distillers Corp.*, 108 N.M. 467, 470, 775 P.2d 233, 236 (1989). However, when application of the law chosen by the parties offends New Mexi-

co public policy, our courts may decline to enforce the choice-of-law provision and apply New Mexico law instead. *United Wholesale Liquor*, 108 N.M. at 470, 775 P.2d at 236; *Sandoval v. Valdez*, 91 N.M. 705, 707, 580 P.2d 131, 133 (Ct.App.1978). New Mexico courts will not give effect to another state's laws where those laws would "violate some fundamental principle of justice." *Reagan v. McGee Drilling Corp.*, 1997–NMCA–014, ¶ 9, 123 N.M. 68, 933 P.2d 867 (quoted authority omitted).

{8} Application of Texas law to the instant matter would likely require enforcing the class action ban. *See AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 199–201 (Tex.App.2003) (contractual prohibition of class actions not fundamentally unfair or violative of public policy). Unless enforcement of the class action ban would run afoul of fundamental New Mexico public policy, our conflict of law rules counsel respecting the choice-of-law provision and applying Texas law.

### 2. It is Fundamental New Mexico Policy that Consumers Have a Viable Mechanism for Dispute Resolution, No Matter the Size of the Claim

{9} New Mexico policy strongly supports the resolution of consumer claims, regardless of the amount of damages alleged. That policy is demonstrated by several of our statutes. For example, the New Mexico legislature enacted the UPA, which is unequivocal: "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." Section 57–12–3. The UPA was clearly drafted to include a remedy for small claims: a party need not show any monetary damage to be entitled to an injunction, Section 57–12–10(A), and "[a]ny person who suffers *any* loss of money ... [may] recover actual damages or the sum of one hundred dollars ($100), whichever is greater." Section 57–12–10(B) (emphasis added).

{10} The fundamental New Mexico policy of providing consumers a mechanism for dis-

follows: "programs and rules," "arbitration," "the code of procedure," "arbitration class pro-

cedures."

pute resolution is also seen in the False Advertising Act, which specifically empowers private individuals to bring rights of action in the name of the state and for "all others similarly situated." Section 57–15–5.

{11} Yet another example of New Mexico's fundamental public policy in ensuring that consumers have an opportunity to redress their harm is the Consumer Protection Division of the Attorney General's Office, which is charged with protecting New Mexico citizens from unfair and deceptive trade practices. In this effort, the Consumer Protection Division is authorized and funded to investigate suspicious business activities, informally resolve the complaints of dissatisfied consumers, educate citizens about their consumer rights, and file lawsuits on behalf of the public.

### 3. The Class Action Device is Critical to Enforcement of Consumer Rights in New Mexico

{12} The opportunity to seek class relief is of particular importance to the enforcement of consumer rights because it provides a mechanism for the spreading of costs. The class action device allows claimants with individually small claims the opportunity for relief that would otherwise be economically infeasible because they may collectively share the otherwise prohibitive costs of bringing and maintaining the claim. *See, e.g.,* 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 1.6, at 26 (4th ed.2002). "In many cases, the availability of class action relief is a *sine qua non* to permit the adequate vindication of consumer rights." *State ex rel. Dunlap v. Berger,* 211 W.Va. 549, 567 S.E.2d 265, 278 (2002). "The class action is one of the few legal remedies the small claimant has against those who command the status quo." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 186, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (Douglas, J., dissenting in part).

{13} The opportunity for class relief and its importance to consumer rights is enshrined in the fundamental policy of New Mexico and evidenced by our statutory scheme. *See, e.g.,* Rule 1–023 NMRA (setting forth the rules of civil procedure governing class actions). Notably, the UPA specifically references class actions as a private remedy available under the act. Section 57–12–10(E). Further, the New Mexico Uniform Arbitration Act declares that arbitration clauses that require consumers to decline participation in class actions are unenforceable and voidable. *See* NMSA 1978, §§ 44–7A–1(b)(4)(f), 44–7A–5 (2001). While this provision may be preempted by the FAA, *see Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ("A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the FAA]."), it is clear evidence of the fundamental New Mexico policy of allowing consumers a means to redress their injuries via the class action device.

■ {14} In New Mexico, we recognize that the class action was devised for "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Romero v. Philip Morris, Inc.,* 2005–NMCA–035, ¶ 36, 137 N.M. 229, 109 P.3d 768 (quoted authority omitted). A purpose of the class action is to conserve party resources. *Id.* As the United States Supreme Court recognized,

> [t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoted authority omitted). "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). The Federal Rules Advisory Committee recognized the critical nature of the class action to individuals with small claims when it di-

rected that one of the grounds on which class certification may be appropriate is where "the amounts at stake for individuals [are] so small that separate suits would be impracticable." Fed.R.Civ.P. 23(b)(3), advisory committee note (1966 amendment).

■ {15} Thus, beyond merely a procedural tool, the class action functions as a gatekeeper to relief when the cost of bringing a single claim is greater than the damages alleged. When viewed in this light, a contractual provision that purports to ban class actions for small claims implicates not just the opportunity for a class action but the more fundamental right to a meaningful remedy for one's claims. This Court has recognized that the right of access to the courts is part of the right to petition for redress of grievances guaranteed by both the United States and New Mexico constitutions. *Jiron v. Mahlab*, 99 N.M. 425, 426, 659 P.2d 311, 312 (1983); *see also* U.S. Const. amends. I, XIV; N.M. const., art. II, § 18. While the class action ban may or may not rise to the level of a constitutional violation, a prohibition on class relief where there is no meaningful alternative for redress of injury certainly does not provide for effective vindication of rights. *See Mitsubishi Motors Corp., v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[S]o long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, [a] statute will continue to serve both its remedial and deterrent function.").

{16} In view of the fact that Plaintiff's alleged damages are just ten to twenty dollars, by attempting to prevent him from seeking class relief, Defendant has essentially foreclosed the possibility that Plaintiff may obtain *any* relief. Thus, we conclude that Defendant's prohibition on class action relief, when applied to small claims plaintiffs, is contrary to New Mexico's fundamental public policy to provide a forum for relief for small consumer claims. The words of the California Supreme Court are apropos:

By imposing this clause on its customers, [Defendant] has essentially granted itself a license to push the boundaries of good business practices to their furthest limits, fully aware that relatively few, if any, customers will seek legal remedies, and that any remedies obtained will only pertain to that single customer without collateral estoppel effect. The potential for millions of customers to be ... without an effective method of redress cannot be ignored.

*Discover Bank v.Super. Ct.*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, 1108 (2005).

{17} Defendant contends that Plaintiff has not met the evidentiary burden of proving that his damages are outweighed by the cost of bringing an individual claim. While we recognize that, in some cases, more extensive factfinding will be required, we emphasize that Plaintiff only alleges his damages to be between *ten and twenty dollars*. We do not find it necessary to engage in an exhaustive analysis regarding whether the economic and opportunity costs of bringing a ten to twenty dollar claim are prohibitive. In light of attorney's fees, the costs of gathering evidence and preparing the case, and the time spent educating himself on the issues and organizing and presenting the claim, the likelihood that Plaintiff's actual costs will exceed ten to twenty dollars is certain. The economic realities of the present case are clearly more tangible than the mere "risk" that Plaintiff will be faced with prohibitive costs. *Cf. Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90–91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (holding that arbitration agreement's failure to address how parties would allocate arbitration costs does not render it per se unenforceable on the grounds that the claimant may be subjected to steep costs where claimant did not present evidence that she would be subjected to such high costs). Suffice it to say that "only a lunatic or a fanatic sues for [ten to twenty dollars.]" *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir.2004).

{18} For all of the foregoing reasons, New Mexico's fundamental public policy requires that consumers with small claims have a mechanism for dispute resolution via the class action. Therefore, application of Texas law, that would allow the class action ban, is contrary to New Mexico public policy. *See AutoNation*, 105 S.W.3d at 199–201. Accordingly, we invoke the public policy excep-

tion and apply New Mexico law rather than Texas law to analyze the validity of the class action ban.

## B. Under New Mexico Law, the Class Action Ban is Invalid Because It is Contrary to Public Policy and Therefore Unconscionable

{19} Plaintiff contends that the class action ban is unconscionable. This determination is a matter of law and is reviewed de novo. *Bowlin's, Inc. v. Ramsey Oil Co.*, 99 N.M. 660, 666, 662 P.2d 661, 667 (Ct.App.1983). We agree.

{20} The classic articulation of unconscionability is that it is comprised of two prongs: substantive unconscionability and procedural unconscionability. Joseph M. Perillo, 7 *Corbin on Contracts* § 29.4, at 388 (2002 ed.). Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair. *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003–NMSC–011, ¶ 14, 133 N.M. 661, 68 P.3d 901; *Guthmann v. La Vida Llena*, 103 N.M. 506, 510, 709 P.2d 675, 679 (1985). Procedural unconscionability is determined by analyzing the circumstances surrounding the contract's formation, such as whether it was an adhesive contract and the relative bargaining power of the parties. *Guthmann*, 103 N.M. at 510, 709 P.2d at 679 (quoted authority omitted). "The weight given to procedural and substantive considerations varies with the circumstances of each case." *Id.*

{21} As set forth above, we concluded in the course of our conflict analysis that the class action ban violates New Mexico public policy. By preventing customers with small claims from attempting class relief and thereby circumscribing their only economically efficient means for redress, Defendant's class action ban exculpates the company from wrongdoing. "Denial of a class action in cases where it is appropriate may have the effect of allowing an unscrupulous wrongdoer to retain the benefits of its wrongful con-

duct." *Discover Bank*, 30 Cal.Rptr.3d 76, 113 P.3d at 1106 (quoted authority omitted). On these facts, enforcing the class action ban would be tantamount to allowing Defendant to unilaterally exempt itself from New Mexico consumer protection laws. It is not hyperbole or exaggeration to say that it is a fundamental principle of justice in New Mexico that corporations may not tailor the laws that our legislature has enacted in order to shield themselves from the potential claims of consumers. Because it violates public policy by depriving small claims consumers of a meaningful remedy and exculpating Defendant from potential wrongdoing, the class action ban meets the test for substantive unconscionability.

{22} In the instant case, the nature of the "terms and conditions" may or may not rise to the level of an adhesive or procedurally unconscionable contract. When a court makes an analysis into whether a particular contract is adhesive, it typically inquires into three factors: (1) whether it was prepared entirely by one party for the acceptance of the other; (2) whether the party proffering the contract enjoyed superior bargaining power because the weaker party could not avoid doing business under the particular terms; and whether the contract was offered to the weaker party without an opportunity for bargaining on a take-it-or-leave-it basis. *Guthmann*, 103 N.M. at 509, 709 P.2d at 678. The Court of Appeals held that the terms did not constitute a contract of adhesion because there was no evidence that Plaintiff could not avoid doing business under the particular terms mandated by Defendant. *Fiser*, 2007–NMCA–087, ¶ 35, 142 N.M. 331, 165 P.3d 328. While we agree that Defendant's "terms and conditions" may not rise to the level of an adhesive contract, we nevertheless conclude that the terms are unenforceable because there has been such an overwhelming showing of substantive unconscionability. For these reasons, the agreement is unconscionable under New Mexico law and will not be enforced in this state.[2]

---

**2.** We note that numerous other jurisdictions have also concluded that class action bans are unconscionable. *See, e.g., Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 984 (9th

Cir.2007); *Skirchak v. Dynamics Research Corp.*, 432 F.Supp.2d 175, 180–81 (D.Mass.2006); *Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862, 867 (2002); *Kinkel v. Cin-*

### C. Invalidation of the Arbitration Agreement and Embedded Exculpatory Class Action Ban is Not Preempted by the FAA

{23} Having held that the class action ban is unenforceable in New Mexico, we turn to an examination of whether the FAA preempts our ruling. Congress enacted the FAA to counteract judicial hostility to arbitration. *See* Sections 1–16; *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). The Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." Section 2. While the FAA prevents "[s]tates from singling out arbitration provisions for suspect status," *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), it does not give arbitration provisions special protection either. It only requires that they be placed "upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (quoted authority omitted). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs.,* 517 U.S. at 687, 116 S.Ct. 1652. Because our invalidation of the ban on class relief rests on the doctrine of unconscionability, a doctrine that exists for the revocation of any contract, the FAA does not preempt our holding. Class action bans that effectively deny consumer plaintiffs relief are invalid in New Mexico, regardless of the contracts in which they are found.

### D. The Class Action Ban is Not Severable

{24} When a provision of a contract is determined to be unconscionable, we "may refuse to enforce the contract, or [we] may enforce the remainder of the contract without the unconscionable clause, or [we] may so limit the application of any unconscionable clause as to avoid any unconscionable result." Section 55-2-302; *accord State ex rel. State Highway & Transp. Dep't. v. Garley,* 111

*gular Wireless, LLC,* 223 Ill.2d 1, 306 Ill.Dec.

N.M. 383, 389–90, 806 P.2d 32, 38–39 (1991). Here, the class action ban is part of the arbitration provision and is central to the mechanism for resolving the dispute between the parties; therefore, it cannot be severed. We decline to enforce the arbitration provision.

### III. CONCLUSION

{25} Contractual prohibition of class relief, as applied to claims that would be economically inefficient to bring on an individual basis, is contrary to the fundamental public policy of New Mexico to provide a forum for the resolution of all consumer claims and is therefore unenforceable in this state. The arbitration provision is invalid and the Court of Appeals reversed. We remand for proceedings consistent with this opinion.

{26} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PETRA JIMENEZ MAES, RICHARD C. BOSSON, and CHARLES W. DANIELS, Justices.

157, 857 N.E.2d 250, 274–75 (2006).