This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date:    August 23, 2012**

**NO. 33,011**

**ANDREA J. FELTS, on behalf of
herself and all others similarly situated,**

Plaintiff-Respondent,

v.

**CLK MANAGEMENT, INC.,
f/k/a BAT SERVICES, INC.,**

Defendant-Petitioner.

**and**

**NO. 33,013**

**ANDREA J. FELTS, on behalf of
herself and all others similarly situated,**

Plaintiff-Respondent,

v.

**CLK MANAGEMENT, INC.,
f/k/a BAT SERVICES, INC.,
and CASH ADVANCE NETWORK, INC.,**

Defendants-Petitioners.

ORIGINAL PROCEEDINGS ON CERTIORARI

**Nan G. Nash, District Judge**

Fredericks Peebles & Morgan, L.L.P.
Frances C. Bassett
Louisville, CO
Joseph V. Messineo
Conly J. Schulte
Omaha, NE

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Jennifer G. Anderson
Emil John Kiehne
Zachary Cormier
Albuquerque, NM

Weir & Partners, L.L.P.
Susan Verbonitz
Philadelphia, PA

for petitioners

Treinen Law Office
Rob Treinen
Albuquerque, NM

Public Justice, P.C.
F. Paul Bland, Jr.
Amy Radon
Washington, DC

Schaefer Law Firm, L.L.C.
Douglas L. Micko

Richard J. Fuller
Minneapolis, MN

for respondent

Gary K. King, Attorney General
Elaine Patricia Lujan, Assistant Attorney General
Karen J. Meyers, Assistant Attorney General
Santa Fe, NM

for Amicus Curiae Attorney General of New Mexico


Doerr & Knudson, P.A.
Randy J. Knudson
Portales, NM

Julie Nepveu
Washington, DC

for Amicus Curiae AARP Foundation Litigation

Richard John Rubin
Santa Fe, NM

for Amicus Curiae National Association of Consumer Advocates

**DECISION**

**BOSSON, Justice.**

{1}     We decide this case by unpublished Decision pursuant to Rule 12-405(B)(1) NMRA because the arbitration clause in question is practically identical to one that this Court recently held to be unenforceable in *Rivera v. American General Financial Services, Inc.*, 2011-NMSC-033, 150 N.M. 398, 259 P.3d 803. Accordingly, relying upon the reasoning in *Rivera*, we affirm the result reached by the Court of Appeals below but for a different reason, and remand to the district court for further proceedings.

**BACKGROUND**

{2}     According to Respondent Andrea Felts, between December 2007 and February 2008 she obtained three short-term consumer loans, commonly known as payday loans, over the internet from subsidiaries of Petitioners.  Two of the loans were for $400 and a third was for $500.  The interest rates on these loans ranged from 521.43% annual percentage rate (APR) to 730% APR.  Each of the nearly identical loan agreements, which Felts "signed" electronically, contained an arbitration clause.  The arbitration clause is as follows:

> AGREEMENT TO ARBITRATE ALL DISPUTES:  By signing
> below and to induce us, MTE Financial Services, Inc. d/b/a Cash
> Advance Network, to process your application for a loan, you and we
> agree that any and all claims, disputes or controversies that we or our

servicers or agents have against you or that you have against us, our servicers, agents, directors, officers and employees, that arise out of your application for one or more loans, the Loan Agreements that govern your repayment obligations, the loan for which you are applying or any other loan we previously made or later make to you, this Agreement To Arbitrate All Disputes, collection of the loan or loans, or alleging fraud or misrepresentation, whether under the common law or pursuant to federal or state statute or regulation, or otherwise, including disputes as to the maters subject to arbitration, shall be resolved by binding individual (and not class) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION. This Agreement To Arbitrate All Disputes shall apply no matter by whom or against whom the claim is filed. Rules and forms of the NAF may be obtained and all claims shall be filed at any NAF office, on the World Wide Web at www.arb-forum.com, or at "National Arbitration Forum, P.O. Box 50191, Minneapolis MN 55405." If you are unable to pay the costs of arbitration, your arbitration fees may be waived by the NAF. The cost of a participatory hearing, if one is held at your or our request, will be paid for solely by us if the amount of the claim is $15,000 or less. Unless otherwise ordered by the arbitrator, you and we agree to equally share the costs of a participatory hearing if the claim is for more than $15,000 or less than $75,000. Any participatory hearing will take place at a location near your residence. This arbitration agreement is made pursuant to a transaction involving interstate commerce. It shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16. Judgment upon the award may be entered by any party in any court having jurisdiction. This Agreement To Arbitrate All Disputes is an independent agreement and shall survive the closing, funding, repayment and/or default of the loan for which you are applying.

{3}     Despite the above agreement, after a dispute arose Felts filed a class action complaint in district court against Petitioner CLK Management Inc. (CLK), one of the loan providers, and various other defendants on December 15, 2008. The complaint alleged violations of both the New Mexico Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to 57-12-26 (1967, as amended through 2007), and the New Mexico Small Loans Act, NMSA 1978, §§ 58-15-1 to 58-12-39 (1955, as amended through 2007). The complaint was amended on June 24, 2009 to add Cash Advance Network, Inc. (CANI), the other loan provider, as a defendant.

{4}     CLK was the first to file a motion to compel arbitration relying on the AGREEMENT TO ARBITRATE set forth above. The district court denied the motion, finding that the prohibition against class arbitration was contrary to public policy and unenforceable under this Court's opinion in *Fiser v. Dell Computer Corporation*, 2008-NMSC-046, 144 N.M. 464, 188 P.3d 1215. CANI later filed a similar motion which was denied on similar grounds.

{5}     After the district court denied CLK's motion to compel arbitration but before CANI filed its motion, the National Arbitration Forum (NAF), the entity selected as the exclusive arbitrator in the AGREEMENT TO ARBITRATE, became unavailable. As we previously explained in *Rivera*, in response to a lawsuit filed

3

by the Minnesota Attorney General claiming anti-consumer bias and questionable "ties to the consumer loan and debt collection industries," the NAF agreed to cease conducting consumer arbitration. 2011-NMSC-033, ¶ 9. Accordingly, after July 24, 2009, the NAF was indisputably unavailable to conduct the arbitration of Felts' claims. *See id.*

{6} The denial of each motion to compel arbitration was timely appealed and the cases were consolidated by the Court of Appeals. In an opinion filed on April 8, 2011, the Court of Appeals largely agreed with the reasoning of the district court. *Felts v. CLK Management, Inc.*, 2011-NMCA-062, ¶ 40, 149 N.M. 681, 254 P.3d 124. First, however, the Court of Appeals discussed a recent U.S. Supreme Court case, *Rent-A-Center, West, Inc. V. Jackson*, 130 S.Ct. 2772 (2010), which issued after the district court decision in this case. *Felts*, 2011-NMCA-062, ¶¶ 18-20. As the Court of Appeals noted, *Rent-A-Center* establishes "that in cases where a delegation provision granting an arbitrator the authority to determine the validity of an arbitration agreement exists, a district court is precluded from deciding a party's claim of unconscionability unless the claim is based on the alleged unconscionability of the delegation provision itself." *Felts*, 2011-NMCA-062, ¶ 20. In short, when an arbitration agreement includes a delegation clause, *Rent-A-Center*

4

precludes courts from deciding threshold issues of arbitrability unless the delegation clause itself is challenged. *Id.*

{7}     The Court of Appeals then concluded that Felts had in fact challenged the delegation clause, and that the district court was correct in finding the arbitration agreement unenforceable due to unconscionability. *Felts*, 2011-NMCA-062, ¶¶ 30, 40. The thrust of Felts' argument against the AGREEMENT TO ARBITRATE was that the prohibition against class arbitration meant, as a practical matter, that she would be unable to vindicate her relatively small claims. *Id.* ¶¶ 30, 39. Because the delegation clause contained a parenthetical prohibiting class arbitration, the Court held this was a sufficient challenge of the delegation clause itself. *Id.* ¶ 30. The Court then proceeded to analyze the unconscionability claim under this Court's precedent in *Fiser* and concluded that the AGREEMENT TO ARBITRATE was unenforceable. *Id.* ¶ 40. Although the Court of Appeals briefly referred to the unavailability of the NAF and the impossibility of that entity conducting arbitration, the opinion did not discuss the legal effect of that unavailability on the enforceability of the AGREEMENT. This Court had not yet issued our opinion in *Rivera.*

{8}     This Court granted certiorari, 2011-NMCERT-006, 150 N.M. 763, 266 P.3d

632, in which the lenders raise the following issues: (1) the Court of Appeals' holding that the class action waiver is unconscionable conflicts with the more recent U.S. Supreme Court precedent in *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, (2011); (2) Respondent failed to attack the delegation clause with sufficient specificity as required under *Rent-A-Center*, 130 S.Ct. 2772; and (3) this Court's recent opinion in *Rivera*, 2011-NMSC-033, is inconsistent with *Concepcion* and Section 5 of the Federal Arbitration Act(FAA) or is otherwise distinguishable. Finding the third issue dispositive, we address it first and decline to reach the other issues.

**DISCUSSION**

{9}     Section 5 of the Federal Arbitration Act (FAA) allows a court to appoint a substitute arbitrator in the event that a named arbitrator becomes unavailable. 9 U.S.C. § 5 (1947).  The federal act states in part:

> [i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire . . . .

*Id.*

6

{10} We recently addressed the applicability of Section 5 of the FAA in a very similar context. *See Rivera*, 2011-NMSC-033. That opinion was published after the Court of Appeals opinion in this case, and consequently, the Court of Appeals did not have the benefit of our interpretation of the issue when it wrote the opinion in this case. In *Rivera*, we held that when an arbitration agreement names a specific arbitrator in such a manner that the choice of arbitrator becomes integral to the agreement as opposed to a mere "ancillary logistical concern," then a court cannot name a substitute arbitrator under § 5 of the FAA without running afoul of the intent of the parties. *Id.* ¶¶ 26, 27, 38. We concluded in *Rivera* that "[i]f the plain language of the contract evidences the parties' intention to resolve disputes solely through a specific arbitration provider, the parties' intent would be frustrated if a court appointed a different arbitration provider." *Id.* ¶ 27.

{11} *Rivera* also discusses various ways in which a court can determine whether a specific arbitrator is integral to the agreement. Exclusive references to a specific arbitrator "weighs in favor of a finding that the designated provider is integral to the agreement to arbitrate." *Id.* ¶ 29. Additionally, "[t]he parties designation of the rules of a specific arbitration provider may indicate that arbitration pursuant to those rules is an integral part of the agreement to arbitrate." *Id.* ¶ 30. We stated

7

that "[m]andatory, as opposed to permissive, contractual language further demonstrates that a specifically named arbitration provider is integral to the agreement to arbitrate." *Id.* ¶ 31.

{12}    Reviewing an arbitration agreement in *Rivera* very similar to the one at issue here, we observed that repeated and exclusive references to the NAF, the adoption of the NAF's rules and procedures, and the use of mandatory as opposed to permissive language indicated to us that the NAF, as the arbitrator chosen by the parties to the contract, was integral to the agreement. *Id.* ¶¶ 32-34, 38.  The arbitration agreement in *Rivera* stated that "[a]rbitration will be conducted under the rules and procedures of the [NAF] or successor organization . . . ." *Id.* ¶ 32. Further, "in order to initiate arbitration, the borrower must obtain a 'Demand for Arbitration' form from the NAF, complete the NAF form, send three copies of the completed form to the NAF, and pay the NAF an initial filing fee." *Id.*  The agreement also "mandated that '[a]rbitration will be conducted under the rules and procedures of the [NAF].'" *Id.* ¶ 33.  Finally, the agreement used mandatory as opposed to permissive language with repeated uses of mandatory terms such as will, shall, and must. *Id.* ¶ 34.  Accordingly, we concluded in *Rivera* that a court could not substitute another arbitrator for the NAF under Section 5 of the FAA without

8

violating the intent of the parties to the contract. *Id.* ¶ 38.

{13}    The facts of the instant case are almost identical to *Rivera*. Again, the AGREEMENT TO ARBITRATE has repeated and exclusive references to the NAF. Not only does the AGREEMENT state that arbitration will be conducted solely by the NAF, it explicitly states that the only way an aggrieved party may even file a claim is at an NAF office using forms provided by NAF. Without the NAF, an individual cannot even initiate a claim against the lenders that would be arbitrated. As in *Rivera*, if this Court were to order a substitute arbitrator, we would not only be rewriting the portion of the AGREEMENT TO ARBITRATE that specifies who will conduct the arbitration, we would also be rewriting the portion of the AGREEMENT that specifies how the arbitration is to begin. Such an action by this Court would certainly frustrate the express intent of the parties. *Id.* ¶ 27.

{14}    The AGREEMENT TO ARBITRATE also states that arbitration will be conducted under the NAF Code of Procedure. Rule 1 of the NAF Code of Procedure states that it "shall be administered only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum." NAF, *Code of Procedure* (August 1, 2008)

http://www.adrforum.com/users/naf/resources/CodeofProcedure2008-print2.pdf. Neither party has alerted this Court to any entities or individuals operating under such an "agreement with the National Arbitration Forum" that would allow them to administer the NAF code. Any substitute arbitrator, therefore, would have to proceed under a code of procedure different from what the parties agreed to. Such an obstacle indicates, as in *Rivera*, that the NAF, as the chosen arbitrator, was integral to the AGREEMENT TO ARBITRATE.

{15}     Finally, the use of mandatory language regarding the use of the NAF here is similar to that in *Rivera*. Here, the AGREEMENT TO ARBITRATE states that any claims "*shall* be resolved by binding individual . . . arbitration by and under the Code of Procedure of the National Arbitration Forum," and "all claims *shall* be filed at any NAF office." (Emphasis added). Such language "evince[s] the parties' intent to arbitrate exclusively before a particular arbitrator, not simply an intent to arbitrate." *Rivera*, 2011-NMSC-033, ¶ 31 (internal quotation marks and citation omitted).

{16}     As we said in *Rivera*,

> [t]he pervasive references to the NAF in the contract compel our conclusion that the parties intended for the NAF to be the exclusive arbitrator in any out-of-court dispute resolution. The parties explicitly specified that arbitration would proceed under NAF rules and

procedures. Arbitration is a matter of consent, not coercion, and the parties may specify by contract the rules under which that arbitration will be conducted. We conclude that the unavailability of NAF as arbitrator threatens to eviscerate the core of the parties' agreement. We hold that arbitration before the NAF was integral to the agreement to arbitrate and that § 5 of the FAA does not allow a court to select and impose on the contracting parties a substitute arbitrator inconsistent with the plain terms of their contract.

*Id.* ¶ 38 (internal quotation marks and citations omitted). Accordingly, consistent with the express intent of the parties, our courts cannot "select and impose on the contracting parties a substitute arbitrator inconsistent with the plain terms of their contract."

**AT&T Mobility LLC v. Concepcion**

{17}   The parties have extensively briefed and argued the applicability of a recent U.S. Supreme Court case, *AT&T Mobility LLC v. Concepcion*. 131 S.Ct. 1740 (2011). That opinion, which was also released after the Court of Appeals opinion in this case, held that California's *Discover Bank* rule, which declared class action waivers in arbitration agreements unconscionable and unenforceable under certain conditions, was preempted by the FAA. *Id.* at 1746, 1753. While *Concepcion* does raise legitimate questions as to the further viability of this Court's *Fiser* opinion, we decline to reach the issue today because it would be purely advisory. *See Porter v. Robert Porter & Sons, Inc.*, 68 N.M. 97, 102, 359 P.2d 134, 137 (1961) (The

11

Supreme Court "will not make useless orders nor grant relief that will avail appellant nothing, and neither will it decide questions that are abstract, hypothetical, or moot, where no actual relief will be afforded.").

**CONCLUSION**

{18}     For the reasons set forth above, we affirm the district court's dismissal of CANI's and CLK's motions to compel arbitration.  We remand to the district court for further proceedings.

{19}     **IT IS SO ORDERED.**


_____
                                                            **RICHARD C. BOSSON, Justice**


**WE CONCUR:**


_____
**PETRA JIMENEZ MAES, Chief Justice**


_____
**PATRICIO M. SERNA, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**

12

_____

**CHARLES W. DANIELS, Justice**