**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THI OF NEW MEXICO AT HOBBS
CENTER, LLC; THI OF NEW MEXICO,
LLC,

      Plaintiffs - Appellants,

and

FUNDAMENTAL ADMINISTRATIVE
SERVICES, LLC; FUNDAMENTAL
CLINICAL CONSULTING, LLC,

      Plaintiffs,

v.

LILLIE MAE PATTON, as the personal
representative of the Estate of Willie
George Patton, Sr., deceased,

      Defendant - Appellees.

No. 13-2012

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 2:11-CV-00537-LH-CG)**

---

Lori D. Proctor, Proctor & Associates, P.C., Houston, Texas, for Plaintiffs – Appellants.

Jennifer J. Foote (Dusti D. Harvey, with her on the brief), Harvey Law Firm, LLC, Albuquerque, New Mexico, for Defendant – Appellee.

Before **HARTZ, TYMKOVICH,** Circuit Judges, and **JACKSON,**[*] District Judge.

_____

**HARTZ,** Circuit Judge.

_____

Under New Mexico law a compulsory-arbitration provision in a contract may be unconscionable, and therefore unenforceable, if it applies only, or primarily, to claims that just one party to the contract is likely to bring. The question before us is whether the Federal Arbitration Act (FAA) preempts this state law for contracts governed by the FAA. We hold that New Mexico law is preempted in this case and the arbitration clause must be enforced.

## I.      BACKGROUND

THI of New Mexico at Hobbs Center, LLC and THI of New Mexico, LLC (collectively THI) operate a nursing home in Hobbs, New Mexico. When Lillie Mae Patton's husband was admitted into the home, he entered into an arbitration agreement that requires the parties to arbitrate any dispute arising out of his care at the home except

_____

[*] The Honorable R. Brooke Jackson, U.S. District Court Judge, District of Colorado, sitting by designation.

claims relating to guardianship proceedings, collection or eviction actions by THI, or

disputes of less than $2,500.[1]

After Mr. Patton died, Mrs. Patton, acting for her husband's estate, sued THI

for negligence and misrepresentation. THI then filed a complaint in the United States

---

[1] The Arbitration Agreement states in full:

> In the event of any controversy or dispute between the parties arising out of or relating to Resident's stay at the Health Care Center, the Health Care Center's Admission Agreement, or breach thereof, or relating to the provision of care or services to Resident, including but not limited to any alleged tort, personal injury, negligence, contract, consumer protection, claims under the New Mexico Unfair Trade Practices Act, or other claim; or any federal or state statutory or regulatory claim of any kind; or whether or not there has been a violation of any right or rights granted under State law (collectively "Disputes"), and the parties are unable to resolve such through negotiation, then the parties agree that such Dispute(s) shall be resolved by arbitration, as provided by the National Arbitration Forum Code of Procedure or other such association.

> The parties agree that guardianship proceedings, collection and eviction actions initiated by the Health Care Center, any dispute where the amount in controversy is less than Two Thousand Five Hundred Dollars ($2,500.00) will be excluded from binding arbitration and may be filed and litigated in any court which may have jurisdiction over the dispute. . . .

> . . . .

> RESIDENT/REPRESENTATIVE UNDERSTANDS THAT BY SIGNING THIS ARBITRATION AGREEMENT, HE/SHE IS WAIVING HIS/HER RIGHT TO HAVE CLAIMS, INCLUDING MALPRACTICE CLAIMS, HE/SHE MAY HAVE AGAINST THE HEALTH CARE CENTER (INCLUDING ITS PARENTS, AFFILIATES, AND SUBSIDIARY COMPANIES, OWNERS, OFFICERS, DIRECTORS, MEDICAL DIRECTORS, EMPLOYEES, SUCCESSORS, ASSIGNS, AGENTS, ATTORNEY AND INSURERS) BROUGHT AS A LAWSUIT IN COURT BEFORE A JUDGE OR JURY.

Aplt. App. at 43–44.

District Court for the District of New Mexico to compel arbitration of the claims. The

district court initially ruled that the arbitration agreement was not unconscionable and

ordered arbitration. *See THI of N.M. at Hobbs Center, LLC v. Patton*,

No. 11-537 LH/CG, 2012 WL 112216, at \*16–22 (D.N.M. Jan. 3, 2012). But the

New Mexico Court of Appeals then held an identical arbitration agreement

unconscionable in *Figueroa v. THI of New Mexico at Casa Arena Blanca, LLC*, 306

P.3d 480 (N.M. Ct. App. 2012), and the district court reversed its prior decision,

granting a motion by Mrs. Patton under Fed. R. Civ. P. 60(b)(6). The district court

further held that the FAA did not preempt the law set forth in *Figueroa* because the

New Mexico appellate court "applied . . . generally applicable unconscionability law

against grossly unreasonable one-sided contracts," as allowed by § 2 of the FAA,

9 U.S.C. § 2 (2006). Aplt. App. at 366. THI appeals, contending that *Figueroa*

impermissibly disfavors arbitration and imposes special burdens on arbitration

agreements. THI also argues that Rule 60(b)(6) was not available to the district court

to set aside its prior order; but we need not address that issue because we set aside the

new order on THI's other ground.

## II.    DISCUSSION

"We review a district court's interpretation of the [FAA] de novo." *Shell Oil Co.

v. CO$_2$ Comm., Inc.*, 589 F.3d 1105, 1108 (10th Cir. 2009). In our view, the district

court's decision is inconsistent with Supreme Court precedent. Although a state court

can apply general rules of unconscionability to set aside an arbitration agreement covered

4

by the FAA, the unconscionability determination cannot be based on the notion that arbitration is inferior to litigation in court.  We review the Supreme Court's case law interpreting the FAA and then apply that precedent to this case.

Congress enacted the FAA in 1925 to overcome judicial hostility to arbitration agreements by putting them on "an equal footing with other contracts." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011).  Thus, § 2 of the Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Thirty years ago the Supreme Court expressed in the strongest terms the commitment to arbitration established by the FAA:

> Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. . . .  The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

In particular, the FAA rejects the view that arbitration is inferior to court proceedings as a method of deciding important rights.  In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625–27 (1985), the Court held that even complex statutory antitrust claims must be submitted to arbitration in accordance with the parties' general arbitration agreement.  It pronounced the parity of arbitration with court proceedings:  "[W]e are well past the time when judicial suspicion of the desirability of

5

arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Id.* at 626–27. And it said that the FAA "provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." *Id.* at 627.

Likewise, in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the Court enforced an arbitration agreement for employment disputes, holding that the Age Discrimination in Employment Act does not require judicial resolution of claims under that statute, *see id.* at 26–27. Rejecting arguments contesting "the adequacy of arbitration procedures," the Court pronounced that "[s]uch generalized attacks on arbitration rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants, and as such, they are far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Id.* at 30 (brackets and internal quotation marks omitted). It said that its earlier "view that arbitration was inferior to the judicial process for resolving statutory claims" had "been undermined by [the Court's] recent arbitration decisions." *Id.* at 34 n.5.

*Mitsubishi* and *Gilmer* rejected the view that the relevant federal statutes implicitly precluded arbitration mandated by the FAA. The Supreme Court has gone further with respect to state law, holding that the FAA preempts even statutes explicitly disfavoring arbitration. In *Perry v. Thomas*, 482 U.S. 483 (1987), an employee who had signed a general arbitration agreement was required to arbitrate a dispute about commissions

6

despite a state law allowing employees to bring wage-collection actions in court regardless of any arbitration agreement.  As the Court wrote, the FAA "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."  *Id.* at 489 (internal quotation marks omitted).  "[T]he broad principle of enforceability," it declared, "is [not] subject to any additional limitations under state law."  *Id.* at 489–90; s*ee also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (FAA preempted state law requiring that notice of arbitration agreement be printed in capital letters and underlined on first page of contract.  "Courts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions. . . .  Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts." (citations and internal quotation marks omitted)); *Southland Corp. v. Keating*, 465 U.S. 1, 16 n.11 (1984) (rejecting application of California Franchise Investment Law that barred enforcement of an arbitration agreement because the statute is "not a ground that exists at law or in equity for the revocation of *any* contract but merely a ground that exists for the revocation of arbitration provisions" (internal quotation marks omitted)).

Particularly relevant here, *Perry* said that the same constraints apply to state common-law doctrine.  Although an arbitration contract can be voided on state-law "grounds . . . for the revocation of any contract," 9 U.S.C. § 2, the ground could not be

7

law that treats arbitration as an inferior means of dispute resolution.  In remanding for

consideration of whether the arbitration clause was unconscionable, the Court warned:

> A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2.  A court may not . . . construe [an arbitration] agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. *Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot.*

482 U.S. at 492 n.9 (emphasis added) (citations omitted).

In other words, just as the FAA preempts a state statute that is predicated on the

view that arbitration is an inferior means of vindicating rights, it also preempts state

common law—including the law regarding unconscionability—that bars an arbitration

agreement because of the same view.  The arbitration agreement in *Perry* could not be

voided on the ground that it is unconscionable to require an employee to arbitrate a wage-

collection action.  Otherwise, a court could "effect what we hold today the state

legislature cannot," *id*, simply by adopting the statutory rule as a specific application of

the common-law principle.  Any unconscionability of the arbitration provision must be

based on some other feature of the provision—a feature other than its subject matter.

Consumer litigation is not treated differently.  *Allied-Bruce Terminix Co. v.

Dobson*, 513 U.S. 265 (1995), rejected an argument that arbitration could not adequately

protect consumers.  The Court wrote:

> States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon

such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for *that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the Act's language and Congress' intent.*

*Id.* at 281 (emphasis added).

One of the Court's most recent decisions, *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), contains language especially relevant to our disposition. AT&T's form contract to provide cellular phone services included a clause mandating arbitration of disputes but prohibiting proceeding against AT&T in a class action. *See id.* at 1744. The Concepcions brought a suit against AT&T for excessive charges, which was consolidated with a putative class action. *See id.* AT&T moved to compel arbitration. *See id.* The lower courts denied the motion to compel because the California Supreme Court had held in *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005), that waivers of collective arbitration (and class litigation) were unconscionable when claims are small and "it is alleged that the party with superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers." 131 S. Ct. at 1746 (internal quotation marks omitted).

The Supreme Court reversed. It declared that when common-law application of general principles "interferes with the fundamental attributes of arbitration[, it] creates a scheme inconsistent with the FAA." *Id.* at 1748. According to the Court, compelling AT&T to submit to class-action arbitration would undermine the informal, streamlined

9

procedures that make arbitration attractive. *See id.* at 1748–53. In the course of its analysis, the Court made the narrower point that applies specifically to our case, reiterating *Perry*'s mandate that "a court may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what the state legislature cannot." *Id.* at 1747 (ellipsis and internal quotation marks omitted). Although § 2 "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability," they cannot be invalidated "by *defenses* that apply only to arbitration or *that derive their meaning from the fact that an agreement to arbitrate is at issue*." *Id.* at 1746 (emphasis added) (internal quotation marks omitted).

Recently, the limits imposed by the FAA on common-law defenses were again pointed out by the Court in *Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201, 1204 (2012) (per curiam). The Supreme Court of Appeals of West Virginia had refused to enforce an arbitration clause in a nursing-home admission agreement that required arbitration of personal-injury and wrongful-death claims. *See id.* at 1203. The state court held that "as a matter of public policy under West Virginia law, an arbitration clause in a nursing home admission agreement adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, shall not be enforced to compel arbitration of a dispute concerning the negligence." *Id.* (internal quotation marks omitted). The United States Supreme Court reversed, holding that the state court's rule was preempted by the FAA because it categorically prohibited arbitration of certain types of disputes.

10

*See id.* at 1203–04. Most relevant to this case, the Court then remanded to determine whether the arbitration clause was "unenforceable under state common law principles," but only if not based on the public policy underlying the rule the Court had just set aside. It wrote: "On remand, the West Virginia court must consider whether, *absent that general public policy*, the arbitration clauses . . . are unenforceable under state common law principles that are not specific to arbitration and pre-empted by the FAA." *Id.* at 1204 (emphasis added).

With this background in mind, we turn to an examination of the *Figueroa* rule. The New Mexico Court of Appeals held that the agreement in *Figueroa* (which is identical to the agreement here) was unconscionably unfair to nursing home residents because it permitted THI to litigate its most likely claims against the resident— guardianship, collection, and eviction claims—while requiring arbitration of the resident's most likely claims against the nursing home—personal-injury claims and the like. *See Figueroa*, 306 P.3d at 483, 491. The court wrote:

> [W]e refuse to enforce an agreement where the drafter unreasonably reserved the vast majority of his claims for the courts, while subjecting the weaker party to arbitration on essentially all of the claims that party is likely to bring. Defendant cannot avoid the equitable doctrine of unconscionability by drafting an agreement that reserves its most likely claims for a judicial forum, and provides some exemptions from arbitration to the resident so that there is some appearance of bilaterality, when that exemption is completely meaningless in practicality because the resident would rarely, if ever, raise that type of claim against the nursing home.

*Id.* at 491 (citation omitted).

11

We will assume as true (although the point is disputed by THI) the state court's factual premise that the claims most likely to be brought by residents are the ones that must be arbitrated, while the claims most likely to be brought by THI are to be litigated in court. And we are, of course, bound by New Mexico law regarding whether a contract is unconscionable. Nevertheless, the only way the arrangement can be deemed unfair or unconscionable is by assuming the inferiority of arbitration to litigation. After all, the state court spoke of "*subjecting* the weaker party to arbitration," clearly evincing the view that having to arbitrate a claim is disadvantageous. *Figueroa*, 306 P.3d at 491 (emphasis added). It is apparent that the arbitration agreement before us would not be deemed unconscionable under New Mexico law if the claims to be arbitrated and the claims to be litigated were reversed, so that guardianship and collection claims were the ones to be arbitrated while the resident had to go to court to bring a personal-injury claim.

Mrs. Patton argues that there are other grounds for finding the arbitration agreement unfair, but ultimately the grounds are based on a perceived inferiority of arbitration to litigation as a means of vindicating one's rights. First she claims that the agreement is unfair "because the residents [who must arbitrate the claims they are likely to make] still face the prospect of litigation by the nursing home." Aplee. Br. at 32. But if residents had to *litigate* the claims they were most likely to make, they would "still face the prospect of litigation by the nursing home." Thus, this alleged unfairness boils down to the residents' having to arbitrate, rather than litigate, the claims *they* are likely to make. Mrs. Patton's second argument is that the agreement is unfair to residents "because it

12

reserves to the nursing home the right not to arbitrate its most likely claims." *Id.* at 34 (emphasis omitted). But the agreement gives the nursing home no more choice than the residents about which claims must be litigated and which must be arbitrated. Personal-injury claims must be arbitrated; guardianship and collection claims must be litigated. Implicit in Mrs. Patton's logic is that it is better to litigate one's claims than to arbitrate them.

The rationale for the state unconscionability rule runs counter to Supreme Court precedent. A court may not invalidate an arbitration agreement on the ground that arbitration is an inferior means of dispute resolution. Common-law defenses to an arbitration demand are preempted by the FAA if they "derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746. The rule of *Figueroa* derives its meaning from the fact that the agreement is an arbitration agreement because the heart of the asserted unfairness is the disparity in what claims must be *arbitrated*.

The view of the New Mexico courts appears to be that so long as they are applying general unconscionability doctrine, the FAA does not limit their reasons for ruling an arbitration agreement unconscionable. This view is illustrated in the New Mexico Supreme Court's leading decision in *Fiser v. Dell Computer Corp.*, 188 P.3d 1215, 1217 (N.M. 2008). In *Fiser* the court held unconscionable an arbitration clause in a consumer contract that prohibited class arbitration. *See id.* at 1217. It noted that the New Mexico Uniform Arbitration Act "declares that arbitration clauses that require consumers to

13

decline participation in class actions are unenforceable and voidable." *Id.* at 1219. Although it conceded that the statutory provision "may be preempted by the FAA," it nevertheless relied on it when reviewing the clause for unconscionability because the statute was "clear evidence of the fundamental New Mexico policy of allowing consumers a means to redress their injuries via the class action device." *Id.* Such analysis is barred by Supreme Court doctrine because it "would enable the court to effect what . . . the state legislature cannot." *Perry*, 482 U.S. at 492 n.9. Any statute preempted by the FAA could be enforced by just applying the "public policy" of the statute under some common-law doctrine, such as unconscionability. Therefore we cannot agree with the statement in *Fiser* (and repeated by *Figueroa*, 306 P.3d at 485) that because the state court's "invalidation of the ban on class relief rests on the doctrine of unconscionability, a doctrine that exists for the revocation of any contract, the FAA does not preempt [the state court's] holding." 188 P.3d at 1222. The Supreme Court made this point clear in *Marmet*, where, after invalidating a "'public policy'" adopted by the West Virginia court to void an arbitration clause, it remanded for consideration of "common-law principles" that might invalidate the arbitration clause, but under the constraint that in doing so the court not consider the invalidated policy. 132 S. Ct. at 1204. Ordinarily, common-law principles can invalidate an arbitration agreement, but not when based on a policy hostile to arbitration.

At oral argument Mrs. Patton cited the Fifth Circuit decision in *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 168–71 (2004), which invalidated

14

an arbitration clause. But the case is distinguishable. In *Iberia* the court followed Louisiana case law in holding unconscionable an agreement that required consumers to arbitrate all their claims but allowed the cellular-telephone provider to choose between arbitration and litigation for its claims. *See id.* at 168. The court held that the state law was not preempted by the FAA because it "d[id] not necessarily express the impermissible view that arbitration is inferior to litigation, for a choice of remedies is better than being limited to one forum." *Id.* at 170. We are not certain that we agree with the Fifth Circuit's conclusion. But we do not need to decide that issue because under the agreement in this case, neither party can unilaterally choose a dispute-resolution forum. Some claims are to be arbitrated and some are to be litigated. Only an agreement of *both* parties could change the forum. As we read *Iberia*, it actually supports our analysis. The unconscionability determination in that case survived preemption because the state law "d[id] not necessarily express the impermissible view that arbitration is inferior to litigation." *Id.* Here, the state law does express the view that arbitration is inferior, and that is "impermissible."

Thus, we hold that the FAA preempts the New Mexico law set forth in *Figueroa*. THI is entitled to compel arbitration of Mrs. Patton's claim.

## III. CONCLUSION

We REVERSE the district court's grant of Rule 60(b)(6) relief and REMAND the case to the district court with instructions to reinstate its order compelling arbitration.

15